UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-22998-Civ-COOKE/TURNOFF

CLEO ROWLAND, as Personal Representative
of the Estate of Joshua Rowland, and
as Assignee of EMILIENNE DOTTIN,

    Plaintiffs,

vs.

DIAMOND STATE
INSURANCE COMPANY, *et al.*,

    Defendants.
_____/

**ORDER GRANTING DEFENDANT
DIAMOND STATE'S MOTION FOR SUMMARY JUDGMENT**

    THIS CASE is before me upon Defendant's, Diamond State Insurance Company ("Diamond State"), Motion for Summary Judgment. ECF No. 37. Plaintiff, Cleo Rowland ("Rowland"), filed her Response to Diamond State's Motion for Summary Judgment, ECF No. 45, and Diamond State submitted its Reply, ECF No. 47. I have reviewed the Motion, the Response, and Reply, the record, the relevant legal authorities, and am otherwise duly advised in the premises. For the reasons provided herein, Diamond State's Motion for Summary Judgment is granted.

**BACKGROUND**

    Rowland, as personal representative of the estate of Joshua Rowland ("Joshua") and as assignee of Emilienne Dottin, brought this action against Diamond State (Count I), First Nonprofit Insurance Company ("First Nonprofit") (Count II), and James River Insurance Company ("James River") (Count III) for breach of their respective insurance policies ("Policies"). This action is derivative of an underlying action filed in 2007 by Rowland and Robert Figueredo ("Figueredo"),

1

the natural parents of Joshua. *Rowland v. Kids Hope United*, Case No. 07-31891, in the Eleventh Judicial Circuit, in and for the Miami-Dade County.[1]  In the underlying action, the plaintiffs alleged that Emilienne and Robert Dottin, foster parents of three month-old Joshua, failed to properly supervise and monitor Joshua in light of his physical condition. Due to their negligence, they failed to prevent the abdominal obstruction and respiratory distress that caused Joshua's death. The plaintiffs also sued the Our Kids of Miami-Dade/Monroe ("Our Kids") and the Florida Department of Children and Families ("DCF"), alleging that these entities were negligent in placing Joshua with the Dottins. In this action, Rowland seeks indemnity under the Policies on behalf of Emilienne Dottin.

Diamond State and Rowland agree on the following facts. Joshua was born on June 12, 2005 with medical needs due to apnea and irregular heart beat. Diamond State's Statement of Facts ¶ 2; Rowland's Statement of Facts ¶ 2. In September 2005, DCF and Our Kids took Joshua into custody, citing concerns about Rowland's ability to care for Joshua's needs. Diamond State's Statement of Facts ¶ 3; Rowland's Statement of Facts ¶ 3. In early September, Our Kids and DCF placed Joshua in the Dottin's home. Diamond State's Statement of Facts ¶ 5; Rowland's Statement of Facts ¶ 5. Emilienne Dottin was licensed to be a foster parent for Our Kids. Diamond State's Statement of Facts ¶ 1; Rowland's Statement of Facts ¶ 1. On September 15, 2005, due to Emilienne Dottin's failure to properly care for and monitor Joshua, Joshua died from abdominal obstruction and respiratory distress. Diamond State's Statement of Facts ¶¶ 11; 13; 15; Rowland's Statement of Facts ¶¶ 11; 13; 15.

---

[1] The 2007 action was later consolidated with a similar action Rowland and Figueredo filed in 2006. *Rowland v. Kids Hope United*, Case No. 06-16415, in the Eleventh Judicial Circuit, in and for the Miami-Dade County.

2

In September 2007, Rowland and Figueredo filed a negligence lawsuit against the Dottins, DCF, and Ours Kids, among others. *See* Diamond State's Mot. to Dismiss Ex 1. During the course of this underlying action, Emilienne Dottin agreed to settle with Rowland pursuant to the terms of a *Coblentz* agreement,[2] whereby Emilienne Dottin agreed to a consent judgment against her in the amount of $160,000.00 in exchange for an assignment of her rights, if any, to bring the instant lawsuit against Diamond State, First Nonprofit, and James River. Diamond State's Statement of Facts ¶ 16; Rowland's Statement of Facts ¶ 16.

In the instant action, Rowland, acting on behalf of Emilienne Dottin pursuant to the *Coblentz* agreement, alleges that Emilienne Dottin was insured under the Diamond State policy ("Policy") issued to the Center for Family & Child Enrichment, Inc. ("Center for Family") and that the Policy provided liability insurance to her for the injuries and damages claimed in the underlying action. Diamond State's Statement of Facts ¶ 15; Rowland's Statement of Facts ¶ 15. She further alleges that Emilienne Dottin timely demanded coverage, but that the tender of her defense in the underlying action was denied. Diamond State's Statement of Facts ¶ 15; Rowland's Statement of Facts ¶ 15. Rowland alleges breach of contract against Diamond State based on its denial of

---

[2] A *Coblentz* agreement is a negotiated final consent judgment entered against an insured which was not defended by his insurer. *Wrangen v. Pa. Lumbermans Mut. Ins. Co.*, 593 F. Supp. 2d 1273, 1278 (S.D. Fla. 2008); *see also Coblentz v. Am. Surety Co. of New York*, 416 F.2d 1059, 1063 (5th Cir. 1969) (describing this type of agreement). Generally, under a *Coblentz* Agreement, an insured defendant enters into a settlement that assigns to the plaintiff the insured's rights against the insurer in exchange for a release from personal liability. *Mobley v. Capitol Specialty Ins.*, 13-20636-CIV, 2013 WL 3794058, at *2 (S.D. Fla. July 19, 2013) (applying Florida law). A *Coblentz* agreement is valid and binding in Florida. *Wrangen*, 593 F. Supp. 2d 1273 (S.D. Fla. 2008). As a result, an insurer will be bound to a settlement agreement/consent judgment negotiated between an insured and a claimant where (1) damages are covered by the policy, (2) the insurer wrongfully refused to defend, and (3) the settlement is reasonable and made in good faith. *Id.*

coverage to Emilienne Dottin in the underlying action and seeks indemnification of the consent judgment.  Diamond State's Statement of Facts ¶ 16; Rowland's Statement of Facts ¶ 16.

Diamond State and Rowland further agree that the Policy, No. AGA0003520, was effective from February 14, 2008 to February 14, 2009 and that Policy, No. AGA0003589, was effective from February 14, 2009 to February 14, 2010. Rowland's Statement of Facts ¶¶ 18-19; Diamond State's Reply 2.  Both are claims Policies.  Rowland's Statement of Facts ¶ 20; Diamond State's Reply 2.  Both Policies have a retroactive date to February 14, 2003.  Rowland's Statement of Facts ¶ 21; Diamond State's Reply 2.  The negligence claims arising from Joshua's death were made against the insureds, at the latest, by the service of the complaint in the underlying lawsuit in September 2007.  Rowland's Statement of Facts ¶ 22; Diamond State's Reply 2.  Diamond State received notice of the claim in September 2009.  Rowland's Statement of Facts ¶ 23; Diamond State's Reply 2.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The function of the trial court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

"The party moving for summary judgment 'bears the initial responsibility of informing the district court of the basis for its motion.'" *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1314 (11th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, (1986)). Once the moving party makes the required showing, the burden shifts to the non-moving party to rebut that showing by producing affidavits or other relevant and admissible evidence beyond the

pleadings. *Id*. at 1315. Any inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

When the non-moving party bears the burden of persuasion at trial, the party moving for summary judgment may satisfy Rule 56's burden of production by either (i) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim," or (ii) demonstrating to the court that "the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex*, 477 U.S. at 331. "If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law." *Id*.

## DISCUSSION

Diamond Insurance argues that it is entitled to a judgment as a matter of law because the claim was not made during the Policy period and therefore was not covered by the Policy. Diamond State Mot. for Summ. J. 8-10. Rowland contends that the claim was brought in 2007, prior to the effective date, but that the retroactive date of February 14, 2003 brings the claim within the Policy period. Rowland's Resp. to Mot. for Summ. J. 8-10.

Under Florida law, insurance contracts are construed according to their plain meaning. *State Farm Mut. Auto. Ins. Co. v. Baldassini*, 909 F. Supp. 2d 1363, 1366-67 (S.D. Fla. 2012) (citing *Garcia v. Fed. Ins. Co.,* 969 So. 2d 288, 291-92 (Fla. 2007)). Ambiguities, on the other hand, are interpreted liberally in favor of the insured and strictly against the insurer who prepared the policy. *Id.* If the language employed in the policy, however, is clear and unambiguous, there is no occasion for construction or the exercise of a choice of interpretations. *Id.* In the absence of ambiguity, it is the function of the court to give effect to and enforce the contract as it is written. *Id.*

Each Policy includes a specific notice advising the insured that the Policy provides claims-made coverage. The relevant notice states as follows:

> DISCLOSURE NOTICE
> THIS IS A CLAIMS-MADE POLICY
> IMPORTANT NOTICE TO POLICYHOLDER
>
> B. Coverage is provided for liability if the claim for damages if [sic] FIRST MADE during the policy period on an event that occurred on or after the retroactive date, if any, and prior to the expiration date of the policy or Extended Reporting Period, if applicable. The reporting of incidents and/or claims is very specific and must be done within a specific time frame as specified within the policy. It is important to review this section of the policy.

Further, the Policy provides coverage for professional liability pursuant to the following terms:

> 1. Insuring Agreement
> We will pay those sums that the insured becomes legally obligated to pay as "compensatory damages" as a result of a "wrongful act." This insurance applies to injury only if a "claim" for damages to which no other insurance applies because of the injury is first made against the insured and reported to us during the "policy period". This insurance does not apply to injury caused by a "wrongful act" that takes place outside of the "coverage territory" or was committed before the Retroactive Date shown in the Declarations or after the "policy period."

Similarly, the Policy provides coverage for the commercial general liability pursuant to the following terms:

> SECTION I – COVERAGES
> COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
> 1. Insuring Agreement
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply…
> b. This insurance applies to "bodily injury" and "property damage" only if:

6

> (3) A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph c. below, during the policy period or any Extended Reporting Period we provide under Section V – Extended Reporting Periods.

The language of the Policy is clear and unambiguous: coverage applies only if a claim is made to the insured and reported to Diamond Insurance during the Policy period and if the claim arises from a wrongful act that took place on or after the retroactive date. The retroactive date does not "bring the claim within the [P]olicy period" as Rowland contends.

The parties do not dispute that the claim was made at the latest in September 2007, when the complaint in the underlying action was served. Therefore, the claim was made five months before the Diamond Insurance Policy incepted in February 2008. Since the claim was made outside of the Policy period, Diamond Insurance had no duty to indemnify. Finally, there is no duty to defend when the complaint in the underlying suit shows that there was no coverage. *See Mt. Hawley Ins. Co. v. Dania Distribution Ctr., Ltd.*, 763 F. Supp. 2d 1359, 1364 (S.D. Fla. 2011) *aff'd,* 513 F. App'x 890 (11th Cir. 2013) (citing *Lawyers Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580-81 (11th Cir. 1995)). Diamond State, having no duty to defend and no duty to indemnify, it is entitled to summary judgment.

## CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment, ECF No. 37, is **GRANTED.**

2. Count I of the Complaint against Defendant Diamond State Insurance Company is **DISMISSED**.

3. The Clerk is directed to **TERMINATE** Defendant Diamond State Insurance Company from this case.

7

4. All pending motions related to Defendant, Diamond State Insurance Company, if any, are **DENIED** *as moot*.

**DONE and ORDERED** in chambers at Miami, Florida, this 18th day of September 2013.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*William C. Turnoff, U.S. Magistrate Judge*
*Counsel of record*