UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-22998-Civ-COOKE/TURNOFF

CLEO ROWLAND, as Personal Representative
of the Estate of Joshua Rowland, and
as Assignee of EMILIENNE DOTTIN,

    Plaintiffs,

vs.

DIAMOND STATE
INSURANCE COMPANY, *et al.*,

    Defendants.
_____/

**ORDER GRANTING DEFENDANT
JAMES RIVER'S MOTION FOR SUMMARY JUDGMENT**

THIS CASE is before me upon Defendant's, James River Insurance Company ("James River"), Motion for Summary Judgment. ECF Nos. 41, 40. Plaintiff, Cleo Rowland, filed her Response to James River's Motion for Summary Judgment, ECF No. 49, and James River submitted its Reply, ECF Nos. 61; 71. I have reviewed the Motion, the Response, and Reply, the record, the relevant legal authorities, and am otherwise duly advised in the premises. For the reasons provided herein, James River's Motion for Summary Judgment is granted.

**BACKGROUND**

Rowland, as personal representative of the estate of Joshua Rowland ("Joshua") and as assignee of Emilienne Dottin, brought this action against Diamond State Insurance Company ("Diamond State") (Count I), First Nonprofit Insurance Company ("First Nonprofit") (Count II), and James River (Count III) for breach of their respective insurance policies ("Policies"). This

1

action is derivative of an underlying action[1] filed by Rowland and Robert Figueredo ("Figueredo"), the natural parents of Joshua. *Rowland v. Kids Hope United*, Case No. 06-16415, in the Eleventh Judicial Circuit in and for Miami-Dade County. In the underlying action, the plaintiffs alleged that Emilienne and Robert Dottin, foster parents of three month-old Joshua, failed to properly supervise and monitor Joshua in light of his physical condition. Due to their negligence, they failed to prevent the abdominal obstruction and respiratory distress that caused Joshua's death. The plaintiffs also sued Our Kids of Miami-Dade/Monroe ("Our Kids") and the Florida Department of Children and Families ("DCF"), alleging that these entities were negligent in placing Joshua with the Dottins. In this action, Rowland seeks indemnity under the Policies on behalf of Emilienne Dottin.

James River and Rowland agree on the following facts. Joshua was placed in Emilienne Dottin's care in early September 2005. James River's Statement of Facts ¶ 14; Rowland's Statement of Facts ¶ 14. On September 15, 2005, Emilienne Dottin failed to supervise and monitor Joshua, who went into distress and ultimately died. James River's Statement of Facts ¶¶ 15-16; Rowland's Statement of Facts ¶¶ 15-16.

In 2006, Rowland and Figueredo filed a negligence lawsuit against Emilienne Dottin, among others. James River's Statement of Facts ¶ 17; Rowland's Statement of Facts ¶ 17. During the course of this underlying action, Emilienne Dottin agreed to settle with Rowland pursuant to the terms of a *Coblentz* agreement,[2] whereby Emilienne Dottin agreed to a consent judgment against

---

[1] The 2006 action was later consolidated with a similar action Rowland and Figueredo filed in 2007. *Rowland v. Kids Hope United*, Case No. 07-31891, in the Eleventh Judicial Circuit, in and for the Miami-Dade County.

[2] A *Coblentz* agreement is a negotiated final consent judgment entered against an insured which was not defended by his insurer. *Wrangen v. Pa. Lumbermans Mut. Ins. Co.*, 593 F. Supp. 2d 1273, 1278 (S.D. Fla. 2008); *see also Coblentz v. Am. Surety Co. of New York*, 416 F.2d 1059, 1063 (5th Cir. 1969) (describing this type of agreement). Generally, under a *Coblentz* Agreement, an insured defendant enters into a settlement that assigns to the plaintiff the insured's rights against the insurer

her in exchange for an assignment of her rights, if any, to bring the instant lawsuit against Diamond State, First Nonprofit, and James River.  James River's Statement of Facts ¶ 19; Rowland's Statement of Facts ¶ 19.

In the instant action, Rowland, acting on behalf of Emilienne Dottin pursuant to the *Coblentz* agreement, alleges that Emilienne Dottin was insured under the James River policy ("Policy") issued to Our Kids and that the Policy provided liability insurance to her for the injuries and damages claimed in the underlying action.  James River's Statement of Facts ¶ 19; Rowland's Statement of Facts ¶ 19.

James River issued a Professional Liability/Commercial General Liability insurance Policy to Our Kids, bearing Policy No. 00013542-1, with coverage incepting on June 30, 2007 and terminating on June 30, 2008.  James River's Statement of Facts ¶ 9; Rowland's Statement of Facts ¶ 9.  Rowland alleges that Emilienne Dottin was an employee of Our Kids, and therefore covered by the Policy.  James River's Statement of Facts ¶ 21; Rowland's Statement of Facts ¶ 21.  Rowland admits the Emilienne Dottin was not a volunteer worker for Our Kids.  James River's Statement of Facts ¶ 7; Rowland's Statement of Facts ¶ 7.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The function of the trial court is not "to weigh the evidence and determine the truth of the

---

in exchange for a release from personal liability. *Mobley v. Capitol Specialty Ins.*, 13-20636-CIV, 2013 WL 3794058, at *2 (S.D. Fla. July 19, 2013) (applying Florida law).  A *Coblentz* agreement is valid and binding in Florida. *Wrangen*, 593 F. Supp. 2d 1273 (S.D. Fla. 2008).  As a result, an insurer will be bound to a settlement agreement/consent judgment negotiated between an insured and a claimant where (1) damages are covered by the policy, (2) the insurer wrongfully refused to defend, and (3) the settlement is reasonable and made in good faith. *Id.*

matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

"The party moving for summary judgment 'bears the initial responsibility of informing the district court of the basis for its motion.'" *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1314 (11th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, (1986)). Once the moving party makes the required showing, the burden shifts to the non-moving party to rebut that showing by producing affidavits or other relevant and admissible evidence beyond the pleadings. *Id*. at 1315. Any inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

When the non-moving party bears the burden of persuasion at trial, the party moving for summary judgment may satisfy Rule 56's burden of production by either (i) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim," or (ii) demonstrating to the court that "the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex*, 477 U.S. at 331. "If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law." *Id*.

## DISCUSSION

James River contends that the Policy did not provide coverage to Emilienne Dottin. James River Mot. for Summ. J. 9-10. James River argues it is undisputed that Emilienne Dottin was not an employee, partner, officer, executive director, stockholder, or volunteer of Our Kids, the only persons insured under the Policy. Rowland contends that Emilienne Dottin was covered as an employee of Our Kids because she performed foster care in furtherance of Our Kids operations.

Rowland's Statement of Facts ¶ 6.  Rowland further states that Emilienne Dottin was not a volunteer but "at the very least was an agent of Our Kids." Rowland's Statement of Facts ¶ 7.

The complaint in the underlying action states that Emilienne Dottin acted on her own behalf and on behalf of Our Kids.  Complaint in the Underlying Action, James River's Compendium of Exhibits, Ex. 6.  The parties do not dispute that Rowland never alleged in the underlying action that Emilienne Dottin was an employee or volunteer of Our Kids.

The record also confirms that Emilienne Dottin was not an employee or volunteer of Our Kids.  James River presented the Affidavit of the Chief Executive Officer of Our Kids stating under oath that Emilienne Dottin was not an employee or a volunteer worker of Our Kids.  Allegra Aff., James River's Compendium of Exhibits, Ex. 2.  James River also produced Rowland's own admission that Emilienne Dottin was not an employee or volunteer of Our Kids.  Rowland's Admission, James River's Compendium of Exhibits, Ex. 3.  Rowland, on the other hand, has presented no evidence supporting that Emilienne Dottin was an employee or a volunteer with Our Kids.

Even assuming that Emilienne Dottin was an agent of Our Kids, as stated in the complaint in the underlying action and in Rowland's Statement of Facts, she would still not be covered by the Policy.  The Policy only covers employees, not agents.  An employee is "a subspecies of agent 'whose principal controls or has the right to control the manner and means of the agent's performance of work.'" *Nationwide Mut. Fire Ins. Co. v. Kaloust Fin., LLC*, 8:12-CV-235-T-33MAP, 2012 WL 6589739, at *4 (M.D. Fla. Dec. 18, 2012).  Thus, "employee" is a narrower category than "agent" and the term "employee" and "agent" are not interchangeable in an insurance policy under Florida law.  *See id.*  Accordingly, the Policy, which covers Our Kids' employees, cannot be interpreted as covering its agents.  Because Emilienne Dottin was not covered under the

5

Policy, James River had no duty to defend or duty to indemnify.  *See Mt. Hawley Ins. Co. v. Dania Distribution Ctr., Ltd.*, 763 F. Supp. 2d 1359, 1364 (S.D. Fla. 2011) *aff'd*, 513 F. App'x 890 (11th Cir. 2013) (citing *Lawyers Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580-81 (11th Cir. 1995)) (finding that there is no duty to defend when the complaint in the underlying suit shows that there was no coverage).  Since James River had no duty to defend and no duty to indemnify, it is entitled to summary judgment and I do not need to address James River's remaining alternative arguments.

## CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** as follows:

1. James River's Motion for Summary Judgment, ECF No. 41, is **GRANTED.**

2. Count III of the Complaint against James River is **DISMISSED**.

3. The Clerk is directed to **TERMINATE** Defendant, James River, from this case.

**DONE and ORDERED** in chambers at Miami, Florida, this 18th day of September 2013.

_Marcia G. Cooke_
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*William C. Turnoff, U.S. Magistrate Judge*
*Counsel of record*