UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-22998-Civ-COOKE/TURNOFF

CLEO ROWLAND, as Personal Representative
of the Estate of Joshua Rowland, and
as Assignee of EMILIENNE DOTTIN,

    Plaintiffs,

vs.

DIAMOND STATE
INSURANCE COMPANY, *et al.*,

    Defendants.
_____/

**ORDER GRANTING DEFENDANT
FIRST NONPROFIT'S MOTION FOR SUMMARY JUDGMENT**

THIS CASE is before me upon Defendant's, First Nonprofit Insurance Company ("First Nonprofit"), Motion for Summary Judgment. ECF No. 42. Plaintiff, Cleo Rowland ("Rowland"), filed her Response to First Nonprofit's Motion for Summary Judgment, ECF No. 51, and First Nonprofit submitted its Reply, ECF No. 69. I have reviewed the Motion, the Response, and Reply, the record, the relevant legal authorities, and am otherwise duly advised in the premises. For the reasons provided herein, First Nonprofit's Motion for Summary Judgment is granted.

**BACKGROUND**

Rowland, as personal representative of the estate of Joshua Rowland ("Joshua") and as assignee of Emilienne Dottin, brought this action against Diamond State Insurance Company ("Diamond State") (Count I), First Nonprofit (Count II), and James River Insurance Company ("James River") (Count III) for breach of their respective insurance policies ("Policies"). This action is derivative of Rowland's and Robert Figueredo's ("Figueredo"), the natural parents of

1

Joshua underlying, action filed in 2006. *Rowland v. Kids Hope United*, Case No. 06-16415, in the Eleventh Judicial Circuit in and for Miami-Dade County.[1] In the underlying action, the plaintiffs alleged that Emilienne and Robert Dottin, foster parents of three month-old Joshua, failed to properly supervise and monitor Joshua in light of his physical condition. Due to their negligence, they failed to prevent the abdominal obstruction and respiratory distress that caused Joshua's death. The plaintiffs also sued Kids Hope United, Inc. ("Kids Hope") and the Florida Department of Children and Families ("DCF"), among others, alleging that these entities were negligent in placing Joshua with the Dottins. In this action, Rowland seeks indemnity under the Policies on behalf of Emilienne Dottin.

Diamond State and Rowland agree on the following facts. On June 12, 2005, Joshua was born prematurely and with a serious medical condition. First Nonprofit's Statement of Facts ¶ 15; Rowland's Statement of Facts ¶ 15. In September 2005, Joshua was placed in the foster home of Emilienne Dottin. First Nonprofit's Statement of Facts ¶ 15; Rowland's Statement of Facts ¶ 15. On September 15, 2005, Joshua died in Emilienne Dottin's foster home due to a small intestinal bowel obstruction and an incarcerated right inguinal hernia. First Nonprofit's Statement of Facts ¶¶ 18; 19; Rowland's Statement of Facts ¶¶ 18; 19.

On August 16, 2006, Rowland filed a civil suit alleging that Emilienne Dottin' negligence caused the death of Joshua. First Nonprofit's Statement of Facts ¶ 20; Rowland's Statement of Facts ¶¶ 20. Rowland also alleged negligence against Kids Hope in a separate count. First Nonprofit's Statement of Facts ¶¶ 21-22; Rowland's Statement of Facts ¶¶ 21-22. On October 13, 2009, Rowland entered into a settlement agreement with Kids Hope, but not Emilienne Dottin

---

[1] The 2006 action was later consolidated with a similar action Rowland and Figueredo filed in 2007. *Rowland v. Kids Hope United*, Case No. 07-31891, in the Eleventh Judicial Circuit, in and for Miami-Dade County.

individually. First Nonprofit's Statement of Facts ¶ 23; Rowland's Statement of Facts ¶ 23. As part of the settlement, First Nonprofit, as the insurer of Kids Hope, paid $32,500 to Rowland. First Nonprofit's Statement of Facts ¶¶ 24-25; Rowland's Statement of Facts ¶¶ 24-25. Rowland signed a release of all claims against Kids Hope and First Nonprofit in connection with the death of Joshua. First Nonprofit's Statement of Facts ¶¶ 21-22; Rowland's Statement of Facts ¶¶ 21-22.

Twenty months after settling her claims against Kids Hope and First Nonprofit, Rowland entered into a *Coblentz* agreement[2] with Emilienne Dottin, whereby Emilienne Dottin agreed to a consent judgment against her in the amount of $160,000 and agreed to assign her rights, if any, against First Nonprofit. First Nonprofit's Statement of Facts ¶ 27; Rowland's Statement of Facts ¶ 27. As a result of Emilienne Dottin's purported assignment of her rights, Rowland filed the instant action. First Nonprofit's Statement of Facts ¶ 27; Rowland's Statement of Facts ¶ 27.

The policy at issue in this case ("Policy"), bearing number TMP0915065, only lists Kids Hope as the named insured. First Nonprofit's Statement of Facts ¶ 6; Rowland's Statement of Facts ¶ 6. The Policy defines the insureds as the named insured, as well as the executive officers, officers, directors, trustees, employees, or volunteers of the named insured while they are acting within the scope of their duties. First Nonprofit's Statement of Facts ¶ 11; Rowland's Statement of

---

[2] A *Coblentz* agreement is a negotiated final consent judgment entered against an insured which was not defended by his insurer. *Wrangen v. Pa. Lumbermans Mut. Ins. Co.*, 593 F. Supp. 2d 1273, 1278 (S.D. Fla. 2008); *see also Coblentz v. Am. Surety Co. of New York,* 416 F.2d 1059, 1063 (5th Cir. 1969) (describing this type of agreement). Generally, under a *Coblentz* Agreement, an insured defendant enters into a settlement that assigns to the plaintiff the insured's rights against the insurer in exchange for a release from personal liability. *Mobley v. Capitol Specialty Ins.*, 13-20636-CIV, 2013 WL 3794058, at *2 (S.D. Fla. July 19, 2013) (applying Florida law). A *Coblentz* agreement is valid and binding in Florida. *Wrangen*, 593 F. Supp. 2d 1273 (S.D. Fla. 2008). As a result, an insurer will be bound to a settlement agreement/consent judgment negotiated between an insured and a claimant where (1) damages are covered by the policy, (2) the insurer wrongfully refused to defend, and (3) the settlement is reasonable and made in good faith. *Id.*

Facts ¶ 11.  The Policy expressly excludes any member of a foster care family from the definition of insureds.  First Nonprofit's Statement of Facts ¶ 11; Rowland's Statement of Facts ¶ 11.  The Policy requires the written consent of First Nonprofit to any transfer of rights by an insured.  First Nonprofit's Statement of Facts ¶ 13; Rowland's Statement of Facts ¶ 13.  Emilienne Dottin did not obtain a written consent to transfer her rights from First Nonprofit.  First Nonprofit's Statement of Facts ¶ 28; Rowland's Statement of Facts ¶ 28 (alleging that Nonprofit consent was not necessary).

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The function of the trial court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

"The party moving for summary judgment 'bears the initial responsibility of informing the district court of the basis for its motion.'"  *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1314 (11th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, (1986)).  Once the moving party makes the required showing, the burden shifts to the non-moving party to rebut that showing by producing affidavits or other relevant and admissible evidence beyond the pleadings.  *Id*. at 1315.  Any inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

When the non-moving party bears the burden of persuasion at trial, the party moving for summary judgment may satisfy Rule 56's burden of production by either (i) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim," or (ii) demonstrating to the court that "the nonmoving party's evidence is insufficient to establish an essential element of the

4

nonmoving party's claim." *Celotex*, 477 U.S. at 331. "If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law." *Id*.

## DISCUSSION

First Nonprofit contends that Emilienne Dottin is not an insured under the Policy because the Policy expressly excludes "any member of a foster care family." First Nonprofit's Mot. for Summ. J. 6-10. Rowland, on the other hand, argues that Emilienne Dottin was insured because she was acting on behalf of Kids Hope, the named insured, when she was performing foster care services and because the exclusion of the foster family members did not apply to foster parents. Rowland's Resp. to Mot. for Summ. J. 6-10.

In the operative complaint in the underlying action, Rowland alleged that Emilienne Dottin was a foster parent and acted at all times on behalf of Kids Hope. *See* Complaint in the Underlying Action ¶ 13; Rowland's Resp. to Mot. for Summ. J. 7. Rowland did not allege that Dottin was an employee of Kids Hope. The Policy covers only the employees, not the agents of Kids Hope. An employee is "a subspecies of agent 'whose principal controls or has the right to control the manner and means of the agent's performance of work.'" *Nationwide Mut. Fire Ins. Co. v. Kaloust Fin., LLC*, 8:12-CV-235-T-33MAP, 2012 WL 6589739, at *4 (M.D. Fla. Dec. 18, 2012). Thus, "employee" is a narrower category than "agent" and the term "employee" and "agent" are not interchangeable in an insurance policy under Florida law. *See id.* Accordingly, the Policy, which covers Kids Hope' employees, cannot be interpreted as covering its agents.

Pursuant to the Policy, "[t]he definition of Insured does not include any member of a foster care family." *See* the Policy, First Nonprofit's Answer, Ex. 1 at p.91. The Policy defines a foster care family as "all persons whose usual place of residence is the same dwelling as the foster

5

children." *See id.* Accordingly, the plain language of the Policy excludes *any* person residing with the foster children from coverage, even if that person is a foster parent. Rowland attempts to create an ambiguity in the Policy, arguing that Emilienne Dottin was an agent or employee of Kids Hope performing foster care services on behalf of Kids Hope, and thus covered by the Policy. The Policy, however, expressly excludes the members of foster care families. Rowland cannot redefine a member of a foster family as an agent or employee to bring this member under the coverage of the Policy. *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003) (finding that insurance contracts must be construed in accordance with the plain language of the policy).

As Emilienne Dottin was not covered by the Policy, First Nonprofit had no duty to defend and no duty to indemnify. *See Mt. Hawley Ins. Co. v. Dania Distribution Ctr., Ltd.*, 763 F. Supp. 2d 1359, 1364 (S.D. Fla. 2011) *aff'd,* 513 F. App'x 890 (11th Cir. 2013) (finding that there is no duty to defend when the complaint in the underlying suit shows that there was no coverage). First Nonprofit, therefore, is entitled to summary judgment and I do not need to address First Nonprofit's remaining alternative arguments.

## CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** as follows:

1. First Nonprofit's Motion for Summary Judgment, ECF No. 42, is **GRANTED.**
2. Count II of the Complaint against First Nonprofit is **DISMISSED**.
3. The Clerk is directed to **TERMINATE** Defendant, First NonProfit Insurance Company, from this case.
4. The Clerk is directed to **CLOSE** this case.
5. All pending motions, if any, are **DENIED** *as moot*.

**DONE and ORDERED** in chambers at Miami, Florida, this 18th day of September 2013.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*William C. Turnoff, U.S. Magistrate Judge*
*Counsel of record*